UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 17-1799

UNITED STATES OF AMERICA
Appellee,

v.

ACEMAR DAMACENO
Defendant/Appellant.

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

# REPLY BRIEF OF DEFENDANT-APPELLANT ACEMAR DAMACENO


Miriam Conrad
Identification No. 17936
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston MA 02210
(617) 223-8061

## TABLE OF CONTENTS

**Page**


Table of Contents ........................................................................................i

Table of Authorities ....................................................................................... ii

Argument...............................................................................................................1

I. THE DISTRICT COURT SHOULD NOT HAVE CONSIDERED THE INFORMANT'S STATEMENTS. [Reply to Govt. Brief at 12-16]..........................................................................................1

II. THE DISTRICT COURT DID NOT APPLY THE CORRECT LEGAL STANDARD. [Reply to Govt. Brief at 16-18].......................4

III. THE PROPOSED CONDITIONS ARE SUFFICIENT TO REASONABLY ASSURE THE SAFETY OF THE COMMUNITY. [Reply to Govt. Brief at 18-21] ...........................................................7

IV. THE PROPOSED CONDITIONS ARE SUFFICIENT TO REASONABLY ASSURE MR. DAMACENO'S APPEARANCE IN COURT. [Reply to Govt. Brief at 21-24) ........................................9

Conclusion ...........................................................................................................13

Certificate of Compliance .................................................................................14

Certificate of Service .........................................................................................15

## TABLE OF AUTHORITIES

**Cases** **Page**

*United States v. Accetturo*, 783 F.2d 382 (3d Cir. 1986)..........................................3

*United States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir. 1985)................................1

*United States v. Barrera-Omana*, 638 F.Supp.2d 1108 (D.Minn. 2009) ................11

*United States v. Blas*, 2013 U.S. Dist LEXIS 135283 (S.D. Ala. Sept. 20, 2013)..12

*United States v. Cochrane*, 896 F.2d 635 (1st Cir. 1990)..........................................2

*United States v. Focia*, 2015 WL 1387949 (M.D. Ala. March 25, 2015).................8

*United States v. Greenburg*, 410 F.3d 63 (1st Cir. 2005)......................................1, 2

*United States v. Jimenez-Beltre*, 440 F.3d 514 (1st Cir. 2006) .................................6

*United States v. Jordan*, 999 F.2d 11 (1st Cir. 1993)...............................................2

*United States v. Ong*, 762 F.Supp.2d 1353 (N.D. Ga. 2010)...................................11

*United States v. Rodriguez*, 950 F.2d 85 (2d Cir. 1991)........................................8, 9

*United States v. Sanchez-Martinez*, 2013 U.S. Dist. LEXIS 98096 (D. Colo. July 12, 2013) ..........................................................................................................12

*United States v. Tortora*, 922 F.2d 880 (1st Cir.1990)......................................5, 6, 8

*United States v. Trujillo-Alvarez*, 900 F.Supp.2d 1167 (D. Ore. 2012)..................12

**Statutes and Regulations**

18 U.S.C. § 3142(f)(2)(B) .......... 3

18 U.S.C. § 3142(i)(1) .......... 6

8 C.F.R. § 214.1(e) .......... 10

8 C.F.R. § 215.2(a) .......... 11

8 C.F.R. § 215.3(g) .......... 11

8 C.F.R. § 274a.1(f) .......... 10

# ARGUMENT

## I. THE DISTRICT COURT SHOULD NOT HAVE CONSIDERED THE INFORMANT'S STATEMENTS. [Reply to Govt. Brief at 12-16]

In defending the district court's consideration of the challenged statements by an informant, the government cites a number of decisions addressing the reliability of informants in the context of suppression motions. Govt. Brief at 14. In those cases, the issue was whether the information was sufficiently reliable to establish probable cause, a far lower threshold than the "clear and convincing" evidence standard applicable here. "A probable cause finding may be based on an informant's tip so long as the probability of a lying or inaccurate informer has been sufficiently reduced." *United States v. Greenburg*, 410 F.3d 63, 69 (1st Cir. 2005), cited in Govt. Brief at 14. Here, in contrast, the question is whether the information reportedly provided by the informant was sufficiently reliable to overcome due process concerns raised by reliance on hearsay at detention hearings, *see United States v. Acevedo-Ramos*, 755 F.2d 203, 207 (1st Cir. 1985), and, in turn, support a finding by clear and convincing evidence.

The government erroneously analogizes the facts here to those in *Greenburg*, claiming that both cases involved "face-to-face interaction between [the] informant and law enforcement." Govt. Brief at 14. There is no evidence

in this case, however, that the informant was present with investigators when he described the offers that "Marcos" allegedly made to him. Agent Rice testified that he "received information" from the informant and that the informant "provided information." App. 23-24. One may infer that the agent met with the informant when he showed Damaceno's passport photo to the informant, App. 27, but that occurred after the agent obtained the crucial information. Moreover, the *Greenburg* court's determination of reliability rested on a number of factors absent here, including the fact that the informant in that case made self-incriminating statements, 410 F.3d at 67-68, investigators corroborated the tip through surveillance, *id*. at 68, and the affiant knew of the suspect's prior involvement in similar activities, *id*. *Cf. United States v. Jordan,* 999 F.2d 11, 14 (1st Cir. 1993) (denial of suppression motion affirmed, relying, *inter alia,* on surveillance of controlled buys), cited in Govt. Brief at 14; *United States v. Cochrane,* 896 F.2d 635, 636, 641 (1st Cir. 1990) (informant provided self-incriminating information and affidavit cited past criminal records of suspects), cited in Govt. Brief at 14.

The government argues that the district court could rely on the affidavit in support of the complaint in assessing the reliability of the informant. Govt. Brief at 15. But the affidavit was not introduced as an exhibit and the government offers no authority for the proposition that it "could be properly considered by the district court." *Id.*

The Bail Reform Act requires a hearing, at which defendant is represented by counsel and has an opportunity to cross-examine and present witnesses. 18 U.S.C. § 3142(f)(2)(B). "Inherent in [these procedural and substantive protections] is the right to know what information is being submitted to the decision-maker and the opportunity to challenge the reliability of the government's sources as well as provide contrary information." *United States v. Accetturo*, 783 F.2d 382, 390-391 (3d Cir. 1986). Judicial consideration of information that was not introduced undermines the due process safeguards of the Act.

Even assuming *arguendo* that the affidavit could be considered, it does not provide sufficient evidence of the informant's reliability. The government misstates the contents of both the district court's detention order and the complaint affidavit when it asserts, "the district court stated that the CW . . . had provided reliable information leading to the seizure of more than fifty illegal firearms and various quantities of ammunition[.]" Govt. Brief at 13. This characterization erroneously claims that information provided by the CW led to the seizure of the firearms. Instead, as the district court judge wrote, largely tracking the ambiguous language of the complaint affidavit, the informant "had previously worked on eight federal law enforcement investigations[1] that led to the seizure of

[1] The complaint affidavit actually said that the CW "worked on *approximately* eight investigations[.]" App. 13 (emphasis added).

over fifty illegal firearms and ammunition." App. 128. This does not assert that the informant had provided information that led to the seizure of the firearms, but only conveys that he had "worked on" investigations that resulted in such seizures. Without knowing the informant's role in those investigations, it is impossible to determine whether that "work" demonstrated reliability. Furthermore, neither the district court nor the magistrate-judge made findings regarding the informant's reliability.

Assuming *arguendo* that the district court could have considered the informant's challenged statements, it still had to determine what weight to give them. The uncorroborated second-hand reports of an unnamed witness should not have counted heavily in the detention determination. The district court judge, who said she had to "consider and weigh" the information, App. 128, failed to reveal how she made that calculus.

## II. THE DISTRICT COURT DID NOT APPLY THE CORRECT LEGAL STANDARD. [Reply to Govt. Brief at 16-18]

The government misses the point in attempting to defend the district court's legal analysis. First, it asserts that the court "specified the standards that it must apply" under the Bail Reform Act. Govt. Brief at 16. But the government ignores the fact that the district court omitted the requirement that the government show *by clear and convincing evidence* that no condition or combination of

conditions will reasonably assure the safety of the community. Instead, it quotes the court's order, which simply asserts that the court must find (without stating the level of proof required) that proposed conditions are inadequate, and that danger be shown by clear and convincing evidence. The standard recited by the district court differs from the statutory one. It fails to specify that the heightened standard of proof applies not just to the existence of danger, but also to a finding that no conditions can reasonably assure the safety of the community. The difference is more than semantic, especially here where the court failed to address the adequacy of potential release conditions. Under these circumstances, the government's assertion "that the district court well understood and cited the standards it must apply" rings hollow. *See* Govt. Brief at 17.

The government mischaracterizes Mr. Damaceno's argument regarding the district court's failure to discuss the proposed conditions, which it described as "failing to detail why each of the proposed conditions would not be effective[.]" Govt. Brief at 17. The district court's error does not lie in its failure to address each proposed condition in detail: it lies in its failure to address the conditions at all.[2] *See United States v. Tortora*, 922 F.2d 880, 883 (1st Cir.1990) (district court

[2] Notably, the government misstates what conditions were proposed, asserting that, at the hearing before the district court, Damaceno proposed an unsecured bond. Govt. Brief at 17, citing App. 71. Although Damaceno had made that suggestion in his written motion for a review of the detention order by

"gave no explanation of why he believed the proposed conditions would prove adequate").

The government contends that an explanation "is not always necessary in other contexts[.]" Govt. Brief at 17, citing *United States v. Jimenez-Beltre*, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) (discussing review of reasonableness of a sentence where appellate court must determine whether there was a reasoned explanation and a plausible outcome, with some deference to district court's judgment). This argument ignores the less deferential standard for review of a detention order, as well as the language of 18 U.S.C. § 3142(i)(1), which requires "written findings of fact and a written statement of the reasons" in support of a detention decision. When a detention order is at issue, "the lack of a written statement of particularized reasons would in all probability necessitate vacation of the order." *Tortora*, 922 F.2d at 883.

Here, the district court's conclusion was confusing and failed to mention possible release conditions. The final paragraph of the order states:

> Finally, the Court has considered danger to the community and concerns about risk of flight. Although no one factor is dispositive here, the Court notes the circumstances of the offense alleged here indicate a danger to the community (as to the alleged statements of Damaceno to engage in more serious crime), the crime charged itself and, despite his family ties here and apparent standing in his community, his immigration status, made all the

---

the district court, App. 71, his counsel asserted at the hearing that he was able to post a $10,000 secured cash bond. App. 112-113.

> more precarious by the pendency of the current charge, indicate a reasonable likelihood of flight.

App. 129.

The final sentence appears to say that the recited factors all “indicate a reasonable likelihood of flight.” It is possible that the sentence suffers from a typographical error and is meant to assert findings of *both* danger to the community and risk of flight. But even read this way, the conclusion is insufficient as a matter of law: it merely finds an indication of danger and of “a reasonable likelihood of flight,” rather than the findings required by the statute.

The government’s argument that the court’s finding as to the insufficiency of the proposed conditions can be inferred, Govt. Brief at 17-18, is unavailing where the district court’s order did not mention the conditions at all.

## III. THE PROPOSED CONDITIONS ARE SUFFICIENT TO REASONABLY ASSURE THE SAFETY OF THE COMMUNITY. [Reply to Govt. Brief at 18-21]

The government’s argument regarding potential danger to the community rests largely on the unfounded conclusion that Mr. Damaceno was a hitman for hire. This premise requires crediting *both* the informant’s report of Mr. Damaceno’s alleged statements and the veracity of the statements themselves. Comparison of the facts here with those presented in the cases cited by the government, Govt. Brief at 19-20, highlight how far short the prosecution has

fallen of the showing required. In *Tortora*, Govt. Brief at 19, the evidence included recordings of an organized crime initiation ritual during which the defendant "swore lifelong allegiance to the Mafia and agreed to murder any individual who posed a threat to it," including his brother. *Tortora,* 922 F.2d at 885. Tortora also was "a proven parole violator [who] had a busy and brutal criminal past." *Id.* at 888-89. The *Tortora* court thus concluded that Tortora was among the "small but identifiable group of particularly dangerous defendants," *id.* at 886, for whom detention is justified. The opposite is true here, where Mr. Damaceno has no record of arrests, convictions, or violence.

In *United States v. Focia*, 2015 WL 1387949 (M.D. Ala. March 25, 2015), Govt. Brief at 20, the court's finding that no conditions would reasonably assure the safety of the community rested on evidence that Focia actually sold firearms, including one to an undercover officer, *id.* at *1; had a signal jamming device in his car, *id.;* sought to accumulate an arsenal of 500 guns, *id.* at *2; and was found with nine firearms, *id.* Focia had a prior conviction for carrying a firearm without a license, was on probation when one of the charged crimes occurred, sold firearms on the "deep web" to anonymous purchasers, used false names, and tried to bypass court security with a loaded gun. *Id.* at *2 No such evidence was adduced here.

The government also relies upon *United States v. Rodriguez,* 950 F.2d 85 (2d Cir. 1991). Govt. Brief at 20. There, the government proffered evidence of

taped conversations in which the defendant's co-defendant introduced him to an undercover agent as his hitman and both defendants agreed to commit a murder. *Id.* at 88. During the same conversation, Rodriguez described another murder he had committed. *Id.*

The strength of the evidence of danger in this case falls far short of that presented in the cases cited by the government. The government's argument that "professing himself to be a hitman[] may have helped [Damaceno] sell more underground firearms," Govt. Brief at 20, is based on nothing more than unquestioning acceptance of the informant's uncorroborated claims and sheer speculation. It also fails to recognize that the informant's subsequent attempts to purchase the firearms from "Marcus" were unsuccessful. App. 038-043.

## IV. THE PROPOSED CONDITIONS ARE SUFFICIENT TO REASONABLY ASSURE MR. DAMACENO'S APPEARANCE IN COURT. [Reply to Govt. Brief at 21-24]

The government's argument that no conditions will reasonably assure the defendant's appearance in court rests exclusively on Mr. Damaceno's status as an undocumented alien. In setting out this argument, the government distorts the significance of that factor and fails to acknowledge the extent to which posting of a substantial cash bond, along with other conditions, will reasonably address any concerns about a risk of flight.

First, the government asserts that Mr. Damaceno's inability to obtain a driver's license or "secur[e] legitimate employment" supports detention. Govt. Brief at 22. The government cites an immigration regulation regarding employment authorization, 8 C.F.R. § 214.1(e),[3] but fails to note that nothing in that or any other provision of immigration law prohibits Mr. Damaceno from working as an independent contractor. *See* 8 C.F.R. § 274a.1(f) ("employee . . . does not mean independent contractors . . . or those engaged in casual domestic employment"). Mr. Damaceno has been self-employed as a floor contractor for many years, and has paid income taxes using a taxpayer identification number obtained from the IRS. App. 085-101.[4] Surely the inability to obtain a driver's license is not a ground for detention. Many released defendants do not drive or have had their driver's licenses suspended or revoked for various reasons.

The government cites a number of decisions detaining defendants with outstanding deportation orders. Govt. Brief at 22-24. No such order has been issued against Mr. Damaceno. Some of the cases cited by the government conclude that an immigration detainer or deportation order would result in the

---

[3] In an apparent typographic error, the government cites this regulation as 8 C.F.R. § 214.1(c). Govt. Brief at 22 n.4.

[4] As noted in Defendant's Motion to Revoke Detention Order, App. 072, such a number may be used by workers who cannot obtain a Social Security number.

defendant's involuntary removal from the country, making him or her unavailable for prosecution. *See, e.g.*, *United States v. Ong*, 762 F.Supp.2d, 1353 (N.D. Ga. 2010), cited in Govt. Brief at 23. But *Ong* acknowledged that other courts have rejected the argument that the possibility of deportation, as opposed to intentional flight, justifies detention. *Ong*, 762 F.Supp.2d. at 1361-1362 and cases cited therein; *see also* Opening Brief at 22-24.

The purported conflict between the immigration court and the criminal court is one that the government is equipped to resolve.

> The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles. The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and individualized basis. This Court ought not run interference for the prosecuting arm of the government.

*United States v. Barrera-Omana*, 638 F.Supp.2d 1108, 1111-12 (D.Minn. 2009).

Under 8 C.F.R. § 215.2(a), removal from the United States is prohibited if it "would be prejudicial to the interests of the United States under [8 C.F.R.] § 215.3." The same regulation requires a departure-control officer to prevent such a departure. 8 C.F.R. § 215.2(a). The regulations define departure as prejudicial to the United States in the case of

> any alien who is needed in the United States . . . as a party to, any criminal case . . . pending in a court in the United States: *Provided*, That any alien who is . . . a party to, any criminal case . . . may be permitted to depart . . . with the consent of the appropriate prosecuting authority[.]

8 C.F.R. § 215.3(g). *See also United States v. Blas,* 2013 U.S. Dist. LEXIS 135283, *26 (S.D. Ala. Sept. 20, 2013), ("administrative deportation proceedings must take a backseat to court proceedings until the criminal prosecution comes to an end"), citing *United States v. Trujillo-Alvarez*, 900 F.Supp.2d 1167, 1179 (D. Ore. 2012).

The government has not shown that these provisions would not be applied in this case. *See United States v. Sanchez-Martinez,* 2013 U.S. Dist. LEXIS 98096, (D. Colo. July 12, 2013) (ordering defendant's release).

///

///

## **CONCLUSION**

For the reasons set forth above and in Mr. Damaceno's opening brief, this Court should vacate the district court's order and remand this case to the district court with instructions that appellant shall be released on the proposed conditions and such other and further conditions as may be just and reasonable.

Respectfully submitted,
ACEMAR DAMACENO
By his attorney:

Dated: September 8, 2017

*<u>/s/ Miriam Conrad</u>*

Miriam Conrad
Identification No. 17936
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel. (617) 223-8061

## <u>**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)**</u>

I, Miriam Conrad, hereby certify that the foregoing brief of Defendant/ Appellant, Acemar Damaceno, complies with the type-volume limitation of FRAP 32(a)(7).

1. The brief contains 2,680 words and 12 pages, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

2. The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated: September 8, 2017

*<u>/s/ Miriam Conrad</u>*
Miriam Conrad

**CERTIFICATE OF SERVICE**

I, Miriam Conrad, hereby certify that I have this 8th day of September, 2017 served the foregoing brief of Defendant/Appellant, Acemar Damaceno, upon the United States by causing copies thereof to be sent via ECF and hand delivery, to AUSA Nicholas A. Soivilien, U.S. Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA 02210, and via first class mail to Acemar Damaceno at his present place of confinement.

Dated: September 8, 2017

*/s/ Miriam Conrad*
Miriam Conrad